**STATE of Missouri, Respondent,**

v.

**Sylvester ROGERS, Appellant.**

**No. WD 33121.**

Missouri Court of Appeals,
Western District.

Sept. 14, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Nov. 2, 1982.

Application to Transfer Denied
Dec. 13, 1982.

James W. Fletcher, Public Defender, Gary L. Gardner, Asst. Public Defender, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Theodore A. Bruce, Asst. Atty. Gen., Jefferson City, for respondent.

Before NUGENT, P.J., and TURNAGE and LOWENSTEIN, JJ.

TURNAGE, Judge.

Sylvester Rogers was charged with murder in the second degree and found guilty by a jury of manslaughter for the death of his father, Lewis Rogers. The court assessed the same punishment as fixed by the jury of 10 years imprisonment.

On this appeal, Sylvester raises the single point that he was entitled to a judgment of acquittal at the close of all the evidence on the theory that it showed, without dispute or contradiction, that Sylvester killed Lewis in self-defense. Affirmed.

Sylvester lived with his father and mother in Kansas City. Sylvester was 31 years old and his father was about 60 years old, and outweighed Sylvester by about 10 pounds. The night of December 20th and the early morning of December 21, 1980, Sylvester, two sisters, their children, and various inlaws and former inlaws were all gathered at the Rogers home drinking. The evidence from Sylvester's sisters and his nephew Wallace indicated that Lewis had been drinking all day on December 20th, and by the early morning on December 21st he was quite intoxicated. Sylvester began calling his father names and harrassing him. Then Sylvester obtained a shotgun, which he kept under a couch in the living room where he slept, and put it to his father's head. For some reason the stock of the gun fell off and Sylvester struck Lewis on the head with the gun.

At this point Lewis told Sylvester to get out, prompting Sylvester to put a knife to Lewis's throat. Sylvester then put the knife down, went to the couch to get the gun again, and told Lewis to pick up the knife. Lewis did so and started to walk toward Sylvester on the couch, saying, "Boy I gave you your first chance; here is your second." At this point Lewis stopped some distance from the couch and, according to Wallace, stood there staggering. Wallace testified Sylvester told Lewis not to come any closer. When Lewis "budged" his foot, Sylvester shot him in the left side of the abdomen, causing his internal organs to immediately protrude through the opening. By the time police officers arrived, Lewis was dead.

After firing the fatal shot Sylvester left the house. The shot occurred at about 2:00 a.m., and Sylvester turned himself in at the police station at about 4:00 a.m.

There were some discrepancies between the State's evidence and Sylvester's version. For instance, Wallace testified that he was standing near Sylvester when the shot was fired and saw Lewis standing very unsteadily, and then "budge" his foot, at which time Sylvester fired. Wallace stated he did not see a knife in Lewis's hand. Pictures of Lewis lying on the floor, however, show a knife between his left forearm and his belt with the blade exposed. Lewis is shown to be lying in front of a couch on his back with the butt end of a shotgun near the edge of the couch extending under the right side of Lewis's head and his right shoulder.

The Jackson County Medical Examiner testified that she performed an autopsy on Lewis and estimated the fatal shot was fired from a range of four to five feet. She also testified that an analysis of Lewis's blood revealed an alcohol content of .39 percent. There was also evidence that Sylvester had been acting like a wild man during the evening and had been drinking along with all the other people present.

Sylvester testified on his own behalf. He stated that his father had been harrassing him that evening and finally, in an effort to make his father stop, he had taken a knife from his pocket and thrown it with the blade closed to his father. Sylvester was sitting on the couch when he threw the knife. He said his father opened the knife and began advancing toward him while swinging the knife with the blade exposed. Sylvester reached under the couch to obtain the shotgun, and told his father to stop. When his father continued to move toward him, Sylvester fired. Sylvester could not remember whether or not he had struck his father in the head with the gun earlier in the evening.

In *State v. Davis,* 572 S.W.2d 243, 246 (Mo.App.1978), this court paraphrased four constituent requirements of self-defense. The last of these is that before resorting to homicide, a person must do everything within his power, consistent with his own safety, to avoid the danger. The court stated with reference to the point raised by Sylvester:

> that self-defense is generally a question of fact for the jury when the evidence appertaining thereto is conflicting or of such a character that different inferences might reasonably be drawn therefrom, and cases holding that self-defense is seldom established as a matter of law and that acquittal of an accused by reason of self-defense as a matter of law, so as to bar submission of the charged homicide offense to the jury, is relegated to those exceptionally rare instances where all the undisputed and uncontradicted evidence clearly establishes self-defense.

A review of the facts in this case readily demonstrates why this is not one of the rare cases described in *Davis.* First, the evidence did not show that Sylvester had done everything in his power consistent with his own safety to avoid any danger posed by Lewis. Sylvester, by his own testimony, did not try to retreat or do anything to avoid Lewis, except to shoot him. From the evidence of the extreme state of Lewis's intoxication, borne out by the alcohol content in his blood, it is obvious that Lewis was in no condition to pursue Sylvester, much less mount a serious attack which would have exposed him to danger of death or great bodily harm.

More importantly, the evidence concerning Sylvester's defense of self-defense was not undisputed or uncontradicted. The evidence produced by the State contained numerous discrepancies from Sylvester's version, the most significant of which was the testimony of Wallace that Lewis did not have a knife in his hand as he staggered toward Sylvester.

It is apparent that this case does not fall within the rule under which a court may enter a judgment of acquittal by reason of self-defense as a matter of law.

The judgment is affirmed.

All concur.